WAUKESHA NATIONAL BANK, Respondent, vs. DEWEY and others, Appellants.

*November 8—December 4, 1934.*

For the appellants there was a brief by *McGovern, Curtis & Devos* of Milwaukee, and oral argument by *Francis E. McGovern* and *H. K. Curtis.*

For the respondent there was a brief by *Frame & Blackstone* of Waukesha, and oral argument by *Harvey J. Frame* and *J. E. Blackstone.*

ROSENBERRY, C. J.  There are thirty separate assignments of error with respect to the findings of fact made by the trial court.  We have carefully examined the record with respect to these assigned errors, and in all cases it is considered that the findings of the trial court are in accordance with the great weight and clear preponderance of the evidence and cannot therefore be disturbed upon appeal.  The record is long and complicated and we shall not attempt to state all of the facts.

In brief outline, the facts as found by the trial court are as follows: On July 6, 1932, the plaintiff began an action in the circuit court for Waukesha county to foreclose a mortgage securing a note for $50,000, which mortgage and note were dated February 20, 1925, due five years after date, executed by the defendants, Lloyd L. Dewey and Sylvia E. Dewey, to E. I. Dewey, and in due course assigned by E. I. Dewey to the plaintiff. At the time foreclosure was begun, there was due upon the note, principal $50,000 with interest from February 13, 1931, and taxes for 1932. After the commencement of the foreclosure action, which had been preceded by many conferences, the Deweys through their attorneys, Waller & Ruzicka, requested the bank not to proceed with the foreclosure, and suggested that a contract be entered into by which a foreclosure sale could be avoided and the Deweys given a chance to sell the property at private sale and avoid a forced sale under a judgment of foreclosure. By the terms of the contract, dated August 29, 1932, it was provided that if the defendants failed to make sale, the property was to be sold at public auction on June 15, 1933. By the terms of the contract, Lloyd L. Dewey and Sylvia E. Dewey, his wife, made a deed of the premises to one John C. Harris, who was to hold the same in escrow. Thereafter the defendants made effort to procure a buyer for the premises, which efforts having been unsuccessful, they requested a postponement of the time of sale to July 8, 1933, and the original contract was modified accordingly. On July 5, 1933, the Deweys changed their attorneys, and on July 5th attempted to revoke, rescind, or cancel the contract of August 29, 1932.

On July 8, 1933, the premises were offered for sale at public auction pursuant to the terms of the agreement, at which the plaintiff bid the upset price $45,000. This bid was raised $1,000, whereupon the plaintiff bid $47,000. Intending bidders having been notified by the defendants that the pur-

chaser, whoever he might be, would buy a lawsuit, no other bids were made. The premises were sold to the plaintiff and deed made to the plaintiff in accordance with the provisions of the contract of August 29, 1932.

One of the principal issues litigated at the trial was whether or not the contract of August 29, 1932, was procured by fraud, coercion, duress, and overreaching. Upon that issue the court found that the contract was—

"untainted by fraud or coercion and was not the result of hard bargaining or overreaching on the part of the plaintiff or any of the other defendants in said foreclosure action, but that the same was executed and delivered at the request and suggestion of said Deweys."

As tending to support the conclusion reached by the trial court, many facts were pointed out, among others, that there were liens against the property at the time of sale amounting to $75,000; that the upset price of $45,000 was fixed after negotiations between the plaintiff and the defendants in which the judgment creditors of the Deweys participated; that the contract of August 29, 1932, was signed after a considerable period of negotiation and bargaining; that the Deweys had the advice of counsel throughout; that it was agreed to by the judgment creditors of the Deweys, whose interests were hostile to those of the plaintiff, and other facts tending to show that the arrangement was voluntarily entered into by the Deweys, was for their interest and advantage; that they were in no way misled and the contract was for their own benefit.

The defendants attacked the transaction on the ground that it amounted to a transfer of an equity of redemption by the mortgagor to the mortgagee under such circumstances that the burden was upon the mortgagee to show affirmatively that the conveyance of the equity of redemption was voluntarily based upon an adequate consideration untainted

by fraud, made without advantage being taken of the debtor's necessity to drive a hard bargain, in accordance with the holding of the court in *Paul v. Smith,* 215 Wis. 613, 255 N. W. 919.

It is a sufficient answer to this contention to say that the title to the premises in question was not conveyed by the mortgagors to the mortgagee. The mortgagors conveyed the title to a third person satisfactory to them, who was to hold the deed in escrow in order that title might be passed in the event that public sale took place or the mortgagors in the meantime procured a purchaser. Therefore the principles of law cited to our attention in support of the proposition urged are not in point; the facts of this case being entirely different than the facts of the cases in which that principle is ordinarily applied. There is nothing in the mere fact that a contract was entered into between a mortgagor and a mortgagee which vitiates it. In this case the making of the contract was solicited by the mortgagors for their own benefit and apparently assented to by the mortgagee in the hope that the mortgagors might find a purchaser who would liquidate the indebtedness of the mortgagor to the plaintiff. The contract did not require the title to be conveyed to the plaintiff unless the plaintiff became the purchaser at a public sale, in which event it had the same right to bid that any other person might have. The contract of August 29, 1932, as already pointed out, was assented to by all of the judgment creditors of the Deweys, among whom were a second mortgagee, the Citizens Bank of Mukwonago, a judgment creditor, amounting to $9,700 plus, Big Bend State Bank, a judgment creditor, to the amount of $3,300 plus, and the East Troy State Bank, a creditor, in the sum of $450 plus. The creditors of the Deweys would certainly not have entered into this arrangement if it had not been in their opinion for the benefit of the Deweys themselves. They were under no coercion by the plaintiff or any-

one else. Far from being tainted with fraud, coercion, or duress, it is considered that the transaction was one freely and understandingly entered into by the mortgagors and their creditors for the mutual benefit of all parties concerned.

The Deweys having had the advantage of the contract of August 29, 1932, for many months, when the time of sale approached which had once been postponed at their request, they sought to rescind and repudiate the contract, the making of which they had solicited under the advice of counsel.. It is hardly necessary to say that under the findings of the trial court, which are amply supported by the evidence, there was in fact no ground for the attempted rescission.

Some question is raised also respecting the fact that in January, 1933, the plaintiff in order to protect the premises from waste, sought the appointment of a receiver in the foreclosure action which was still pending. It appears that the Deweys had let into the premises persons who were conducting a tavern or roadhouse with consequent damage and injury to the buildings; that no part of the rent received was paid to the mortgagee; that it was impossible for the plaintiff to obtain insurance upon the premises because of the increased hazard, and to protect itself plaintiff sought the aid of a court of equity. We find in this transaction no repudiation of the contract of August 29, 1932. Upon the promise of the Deweys to cause the removal of the objectionable persons from the premises, receivership proceedings were dropped and thereafter the Deweys sought and obtained postponement of the time of sale originally provided for in the contract.

Other questions are raised in briefs of counsel which in view of the conclusions we have reached require no discussion.

*By the Court.*—Judgment affirmed.